UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| In re | <u>Chapter 11</u> |
| 36TH STREET PROPERTY, INC., *et al.*, | Case No. 22-40563 (JMM) |
| Debtors. | (Jointly Administered) |

---------------------------------------------------------x

**OBJECTION OF UNITED STATES TRUSTEE TO (I) APPROVAL OF COMBINED SALE OF DEBTORS' ASSETS AND (II) CONFIRMATION OF <u>PLAN OF LIQUIDATION FOR 36TH STREET PROPERTY, INC.</u>**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), by and through his undersigned counsel, hereby objects (this "Objection") to (i) approval of the motion (ECF No. 134, the "Sale Motion") of 36th Street Property Inc. (the "Real Property Debtor") and HR 442 Corp. (the "Hotel Debtor" and together with the Real Property Debtor, the "Debtors") for a combined sale of their assets, and (ii) confirmation of the plan of liquidation for the Real Property Debtor (ECF No. 130, the "Plan")[1] proposed by Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of UBS Commercial Mortgage Trust 2019-C17, Commercial Mortgage Pass-Through Certificates, Series 2019-C17 (the "Secured Noteholder") and the Real Property Debtor, and in support the Objection, respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Debtors own and operate a 56-room hotel located at 442 West 36th Street in Manhattan (the "Real Property"). The Real Property Debtor owns the Property, and the Hotel Debtor owns and operates the hotel business—including the fixtures, furniture, website,

---

[1] Morrison Tenenbaum ("Debtor's Counsel") has voluntarily consented to extend the deadline to object to confirmation of the Chapter 11 Plan (ECF Doc. No. 130) to January 29, 2024 at 10 p.m. EST.

1

contracts, customer lists, and licenses. Aside from the Secured Noteholders' claim (which was filed against both Debtors), most of the claims filed in these cases—about 85% on a dollar basis—were filed against the Hotel Debtor. Under the Sale Motion, the Debtors and Secured Noteholder are seeking authority to conduct a combined sale of the real property and the hotel business and allocate 97% of the sale proceeds to the Real Property Debtor. Under the Plan, those sale proceeds would be distributed to the Real Property Debtor's creditors (primarily, the Secured Noteholder). The Debtors and Secured Noteholder are not seeking to confirm a plan for the Hotel Debtor. Nonetheless, they are seeking authority to distribute to the Secured Noteholder nearly all the 3% of sale proceeds allocated to the Hotel Debtor. The Debtors anticipate that the Hotel Debtor's case will ultimately be dismissed as administratively insolvent, and the other creditors of the Hotel Debtor will receive nothing in these cases.

The United States Trustee respectfully submits that the Court should decline to approve the proposed combined sale of the Debtors' assets because the Sale Motion is not supported by sufficient evidence. Specifically, the Debtors and Secured Noteholder have failed to prove that (i) the proposed sale is an arms-length transaction, (ii) the proposed allocation of the sale proceeds between the Debtors is appropriate, and (iii) the Hotel Debtor would generate more proceeds for its estate and creditors from the combined sale rather than separately selling its business as a going concern.

The United States Trustee further respectfully submits that the Sale Motion should also be denied to the extent the Debtors and Secured Noteholder are seeking to sell the Debtors' assets free and clear of potential successor liability claims of parties who have received no notice of these bankruptcy cases.

Finally, the United States Trustee respectfully submits that confirmation of the Plan should be denied because it fails address the tax implications of the Plan and fails to set aside money for payment in full of any capital gains taxes that will result from the proposed sale of the Debtors' assets under the Plan.

## BACKGROUND

### General Facts

1. On May 22, 2022, the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code by filing petitions in each of the cases, 36th Street Property Inc., Case No. 22-40563, and HR 442 Corp, Case No. 22-40562. ECF Doc. Nos. 1.

2. The Debtors' cases were jointly administered by order of the Court dated April 25, 2022. ECF Doc. No. 19.

3. 36th Street Property Inc, is the owner of the Real Property located at 442 West 36th Street, New York, NY where HR 442 Corp. operates the hotel business under the name Hudson River Hotel.

### Sale and Plan

1. On December 21, 2023, the Debtors filed an Amended Motion for an Order seeking approval of the sale to a Stalking Horse Bidder, among other relief. ECF Doc. No. 134. The Debtor has entered into a sale agreement with Hudson West Hospitality, LLC (the "Stalking Horse Bidder") to sell the Debtor's property, personal property and intangible property for $18,200,000. Id.

2. On January 8, 2024, the Court entered an Order approving the bidding procedures and auction process. ECF Doc. No. 141. The hearing on the motion to approve the sale to a buyer is scheduled for February 7, 2024. Id.

3.  On December 15, 2023, the Secured Noteholder and the Real Property Debtor filed a joint Chapter 11 Plan of Liquidation in the 36th Street Property Inc. case. ECF Doc. No. 130.

## OBJECTION

**I.  Debtors and Secured Noteholder Have Failed to Provide Sufficient Evidence In Support of a Combined Sales of Debtors' Assets.**

Under 11 U.S.C. § 363, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). To approve a sale under Section 363 prior to confirmation of a plan, the court must "expressly find from the evidence presented . . . a good business reason to grant such an application." See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). The bankruptcy court "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." Id. In Lionel, the Second Circuit articulated the following factors to be considered in evaluating a sale:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

Id. These factors are not exclusive and merely serve as a guide to determining the best interests of the estate. Id. See also In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (applicant bears burden of demonstrating that a proposed 363(b) sale will aid debtor's reorganization and reflects good business judgment); and In re G. S. Distribution, Inc., 331 B.R. 552, 560 (Bankr. S.D.N.Y. 2005) (the debtor must show that the sale is in the

4

best interests of the estate). If the sale is to insiders, the debtor must demonstrate that the sale does not unfairly benefit the insiders at the expense of creditors and the estate. In re George Walsh Chevrolet, Inc., 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990). See also In re General Bearing Corp., 136 B.R. 361, 366 (Bankr. S.D.N.Y. 1992) (a Section 363 sale must be within the sound business judgment of the estate, not the insider purchasers).

Under the Sale Guidelines adopted by the Bankruptcy Court for the Eastern District of New York on March 29, 2010, the proponent of a sale under Section 363 must proffer or present evidence that will enable the Court to make findings, including the following:

> (1) a sound business reason exists for the transaction; (2) the property has been adequately marketed, and the purchase price constitutes the highest or otherwise best offer and provides fair and reasonable consideration; (3) *the proposed transaction is in the best interests of the Debtor's estate, its creditors*, and where relevant, its interest holders; (4) the purchaser has acted in good faith, within the meaning of section 363(m) of the Bankruptcy Code; (5) adequate and reasonable notice has been provided; . . . and (10) *the Debtor and the purchaser have entered into the transaction without collusion, in good faith, and from arm's-length bargaining positions,* and neither party has engaged in any conduct that would cause or permit the agreement to be avoided under section 363(n) of the Bankruptcy Code (emphasis added).

See Sale Guidelines, at 5-6, § 1(c).

Moreover, bankruptcy sales under Section 363 should be scrutinized closely by the Court where all, or substantially all, of the assets are being liquidated, due to the dangers associated with providing "the functional equivalent of an order confirming a conventional chapter 11 reorganization plan" without the protections inherent in the confirmation process. See In re Savage Indus., Inc., 43 F.3d 714, 720 n.9 (1st Cir. 1994) (special bankruptcy scrutiny warranted in liquidations under Chapter 11).

      **a.      Lack of Evidence that the Proposed Sale is an Arms-Length Transaction.**

A debtor seeking authority to sell its assets in bankruptcy must disclose any connections to the proposed purchaser or any other information that would call into question the good-faith, arms-length nature of the proposed transactions. In re Watertech Holdings, LLC, 619 B.R. 324, 336 (Bankr. D.S.C. 2020). Courts have found that a lack of documentation surrounding the transaction not only fuels concerns but can halt the sale from moving forward. See, e.g., Willemain v. Kivitz, 764 F.2d 1019, 1024 (4th Cir. 1985). Under the Sale Guidelines adopted by this Court, a debtor seeking approval for a sale of its assets must submit evidence demonstrating, among other things, that "the debtor and the purchaser have entered into the transaction without collusion, in good faith, and from arm's-length bargaining positions." Sale Guidelines, at 5-6, § 1(c).

Here, the Debtor and Secured Noteholder have failed to submit evidence demonstrating that the proposed combined sales of the Debtors' assets is an arms-length transaction. The Court should decline the proposed sale unless the Debtors and Secured Noteholders submit affidavits disclosing any connections between the proposed purchaser and its owners and investors, the Debtors and their owners, the Secured Noteholder and its owners, the Debtors' management company, and/or the Debtors' professionals. To the extent no such connections exist, the Debtors and Secured Noteholder should file affidavits in support of the Sale Motion and Plan, attesting that the proposed sale is arms-length.

      **b.      Lack of Evidence that Proposed Allocation of the Sale Proceeds Between the Debtors is Appropriate.**

Under the Sale Motion and the Plan, the Secured Noteholder and the Debtors are seeking authority for a combined sale of the Real Property owned by the Real Property Debtor and the hotel business owned by the Hotel Debtor, with 97% of the sale proceeds to be allocated to the

Real Property Debtor and distributed to its creditors under the Plan. The Debtors and Secured Noteholder have failed, however, to include any evidence that the 97%-3% allocation of the sale proceeds is appropriate. The United Status Trustee respectfully submits that the Court decline to approve the proposed sale and allocation of sale proceeds unless and until the Debtors submit evidence, including an affidavit and financial projections, of the relative values of the Real Property Debtor and Hotel Debtor, demonstrating that the proposed allocation is fair to each Debtors' estate and creditors rather than arbitrary.

Furthermore, while the Debtors are not seeking to confirm a plan for the Hotel Debtor, they are seeking authority under the Sale Moton to distribute nearly all the 3% of the sale proceeds allocated to the Hotel Debtor to the Noteholder. The creditors of the Hotel Debtor—who, aside from the Secured Noteholders, hold about 85% of the claims filed in these cases—will likely receive nothing. There are concerns about this allocation because that there appears to be no evidentiary support in the record as to how it was determined that 3% of the sale proceeds, or approximately $500,000 based on the stalking horse bid, is the appropriate percentage to be apportioned to the assets of the Hotel Debtor.

        **c.**        **Lack of Evidence that Combined Sale Will Generate More Proceeds for the Hotel Debtor and its Estate.**

Under the Sale Motion and Plan, the Debtors and Secured Noteholder are seeking approval for a combined sale of the Debtors' separate assets that will generate approximately $500,000 for the Hotel Debtor's assets. The Debtors and Secured Noteholder fail, however, to support the Sale Motion and Plan with evidence that the combined sale and proposed allocation to the Hotel Debtor will generate more proceeds for the Hotel Debtor and its estate than the Hotel Debtor could generate in a separate going concern sale of its hotel business. The Debtors

and Secured Creditor have not met its burden of demonstrating that the sale price is fair and reasonable *with respect to the Hotel Debtor*.

Further clouding the issue of whether the proposed sale is in the best interest of the Hotel Debtor is the lack of disclosure and transparency in these cases. Under the Court Order authorizing joint administration of these case, dated April 25, 2022, the Debtors were required to file separate monthly operating reports. To date, however, the Debtors have failed to file separate operating reports. In addition, despite repeated requests from the United States Trustee since the outset of this case, the Debtors have failed to produce a copy of the lease agreement between the Hotel Debtor and the Real Property Debtor.

The United States Trustee respectfully submits that the Court should decline to approve the combined sale of the Debtors' assets unless and until the Debtors submit compelling evidence that $500,00 is the most the Hotel Debtor would generate if it sold its hotel business as a going concern. In support of that affidavit, the Debtors should include financial projections for the hotel business and produce any lease or submit an affidavit that no lease exists.

## II.     Any Order Approving the Proposed Sale Should Not Release Successor Liability Claim of Parties With No Notice of these Bankruptcy Cases.

Successor liability claims should not be released in connection with a bankruptcy sale unless the holders of such claims receive notice of the bankruptcy case, the sale motion, and the proposed release of their claims. Here, while the Debtor and Secured Noteholder have not yet filed proposed orders approving the proposed sale and confirming the Plan, the Sale Motion indicates that they may seek to release successor liability in connection with the sale. The United States Trustee respectfully submits that any release of successor liability claims should limited to

8

the claims of parties who have received notice of these Bankruptcy Cases, the Sale Motion and the Plan.

### III. **Confirmation Should Be Denied Because Plan Fails to Address Capital Gains Taxes**.

Section 1129 of the Bankruptcy Code authorizes the bankruptcy court to confirm a plan only when it "complies with the applicable provisions of the Code." 11 U.S.C. § 1129. The plan proponent bears the burden of establishing compliance with section 1129. In re Charter Commc'ns, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (citing Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.), 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof . . . under § 1129(a) . . . "); In re Worldcom, Inc., No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing Briscoe).

Section 1129(a) of the Bankruptcy Code contains 16 standards that must be met for the Court to confirm a plan. 11 U.S.C. § 1129(a). The failure to address tax implications of the sale of the Real Property with respect to capital gains may prevent the Real Property Debtor from confirming its Plan. There is no indication how those taxes, if owed, would be paid, making it unclear if the plan complies with 11 U.S.C. § 1129(a)(9). See In re Scott Cable Communication, 227 B.R. 596,601(Bkrtcy D. Conn. 1998) (The Court denied confirmation, finding that the capital gains taxes resulting from the sale of the debtor's assets under plan constitute an administrative claim that must be paid in full under a plan).

Therefore, confirmation of the Plan should be denied because it fails to address the tax implications of the Plan and fails to set aside money for payment in full of any capital gains taxes that will result from the proposed sale of the Debtors' assets under the Plan.

## CONCLUSION

Based on the foregoing, the United States Trustee respectfully requests that the Court sustain the objection, deny the sale motion, deny confirmation of the Plan, and grant such other and further relief as it deems just and proper.

Dated: New York, New York
       January 29, 2024

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By: */s/ Reema Lateef*
Reema Lateef, Esq.
Trial Attorney
Office of the United States Trustee
Eastern District of New York
Alexander Hamilton Custom House
One Bowling Green, Room 510
New York, New York 10004-1408
Tel. (212) 206-2580